UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| MARIAN GAIL BROWN : | CIVIL ACTION NO. |
|     Plaintiff : | |
| : | |
| v. : | |
| : | |
| HEARST CORPORATION, HEARST : | |
| MEDIA SERVICES CONNECTICUT, LLC, : | |
| HEARST CT POST, LLC, JOHN ALCOTT, : | |
| BARBARA ROESSNER, AND BRIAN KOONZ,: | |
|     Defendants : | |
| : | AUGUST 22, 2014 |

## COMPLAINT

**INTRODUCTION**

1. This is an action brought by Plaintiff MariAn Gail Brown as a result of the unlawful and retaliatory actions of the Defendants, Hearst Corporation, Hearst Media Services Connecticut, LLC, Hearst CT Post, LLC, John Alcott, Barbara Roessner, and Brian Koonz, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e and the Civil Rights Act of 1991, the Age Discrimination in Employment Act, of 1967, 29 U.S.C. 621-634, and the Connecticut Fair Employment Practices Act, Connecticut General Statutes Section 46a-60, et seq. Additionally, Plaintiff asserts claims under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* (hereinafter "FLSA"), and the Connecticut Minimum Wage Act, Conn. Gen. Stat. §31-58 *et seq.* (hereinafter "CMWA") for failure to pay overtime and retaliation for objecting to Defendants' violations of FLSA and CMWA. Lastly, Plaintiff brings state law claims for negligent and intentional infliction of emotional distress, battery, and false imprisonment.

**THE PARTIES**

2. Plaintiff, MariAn Gail Brown ("Plaintiff") is a fifty-one year old female who resides in Connecticut.

3. Defendant Hearst Media Services Connecticut, LLC ("HMSC"), is a Delaware limited liability company with principal offices located at 300 West 57th Street, New York, New York 10019. Defendant HMSC is an indirect wholly-owned subsidiary of The Hearst Corporation.

4. Defendant The Hearst Corporation ("Hearst") is a Delaware Corporation with principal offices located at 300 West 57th Street, New York, New York 10019.

5. Defendant Hearst CT Post, LLC ("CT Post") is a Delaware limited liability company with principal offices located at 410 State Street, Bridgeport, Connecticut 06604.

6. Defendants HMSC, Hearst, and CT Post own and operate four daily newspapers and seven weekly newspapers in Connecticut, including the "Connecticut Post."

7. At all relevant times, Plaintiff was jointly employed by Defendants HMSC, Hearst, and CT Post. Defendants HMSC, Hearst, and CT Post are an integrated or joint employer of the plaintiff and publish and distribute the Connecticut Post in Connecticut.

8. Defendant John Alcott ("Alcott") is an individual residing in Westchester County, New York. Defendant Alcott is an employee of Hearst, currently holding the position of co-managing editor of the Connecticut Post.

9. Defendant Barbara Roessner ("Roessner") is an individual residing in Connecticut. Defendant Roessner is an employee of Hearst, currently holding the position of Executive Editor of the Connecticut Post.

10. Defendant Brian Koonz is an individual residing in Newtown, Connecticut. Defendant Koonz is an employee of Hearst who at all times relevant to the instant action, was an editor and/or metro-editor at the Connecticut Post.

**JURISDICTION**

11. The United States District Court for the District of Connecticut has subject matter jurisdiction over this case under the provisions of 28 U.S.C. § 1331 because it asserts claims under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, the Age Discrimination in Employment Act, 29 U.S.C. §§ 621-634, and Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. § 2000e *et seq.*

12. Supplemental jurisdiction over Plaintiff's state law claims is conferred by 28 U.S.C. § 1367.

**PROCEDURAL REQUIREMENTS**

13. On or about September 24, 2013, Plaintiff filed a charge of discrimination with the Connecticut Commission on Human Rights and Opportunities ("CCHRO"), which in turn filed Plaintiff's charges with the Equal Employment Opportunities Commission ("EEOC"). Plaintiff's charge was designated as CHRO No. 1420106, and EEOC No. 16A-2013-01478, respectively.

14. On or about May 29, 2014, the CHRO issued a release of jurisdiction to Plaintiff on her claims contained in her charge of discrimination relating to CHRO No. 1420106. Plaintiff has commenced this action within ninety (90) days of receiving said letter from the CHRO.

15. On or about June 3, 2014, the EEOC issued a notice of right to sue regarding Plaintiff's claims contained in her charge of discrimination relating to 16A-2013-01478.

Plaintiff has commenced this action within ninety (90) days of receiving said letter from the EEOC.

16. On or about November 13, 2013, Plaintiff filed a second charge of discrimination and retaliation with the CHRO and EEOC. Plaintiff's charge was designated as CHRO No. 1420164, and EEOC No. 16A-2014-00245, respectively.

17. On June 9, 2014, the CHRO issued, and the Plaintiff received, a release of jurisdiction to Plaintiff on her claims contained in her charge of discrimination and retaliation relating to complaint No. 1420164. Plaintiff has commenced this action within ninety (90) days of receiving said letter from the CHRO.

18. On June 3, 2014, the EEOC issued a notice of right to sue regarding Plaintiff's claims contained in her charge of discrimination and retaliation relating to her complaint No. 16A-2014-00245. Plaintiff has commenced this action within ninety (90) days of receiving said letter from the EEOC.

**BACKGROUND**

19. During her 24-year employment with Defendants HMSC, Hearst, and CT Post and their predecessors, Plaintiff worked as a Staff Writer, Investigative Reporter, and Columnist. During this time, Plaintiff established herself as an accomplished and award-winning reporter who was popular with readers. In recognition of her skills, Plaintiff was given her own column, and was regularly assigned to cover top and important stories on a state and national level. Plaintiff's stories consistently appeared on the front page of the Connecticut Post and were promoted on the Post's website with high visibility. Additionally, Plaintiff's stories were also often run in other Hearst publications.

20. In approximately October of 2012, Defendant Alcott was hired as Assistant Managing Editor for the Connecticut Post. Approximately six weeks later, Defendant Koonz was assigned to the position of Metro Editor. As Metro Editor, Defendant Koonz was Plaintiff's immediate supervisor. Defendant Koonz in turn reported to Defendant Alcott.

21. Beginning in December of 2012 and continuing up until her termination of employment on October 30, 2013, Plaintiff was pressured and directed to work overtime hours but was instructed by Defendant Alcott that, absent express authority, her time sheets must only report a total of forty hours.

22. On information and belief, an agent and/or agent(s) of Defendants HMSC, Hearst, and CT Post altered Plaintiff's time sheets and forged Plaintiff's signature in order to deprive Plaintiff of compensation.

23. On other occasions, in order to avoid "liability" for overtime compensation, Defendants Alcott and Koonz directed Plaintiff to take "comp time" in separate payroll periods, which is a violation of federal and state wage and hour laws.

24. Plaintiff advised Defendants Koonz and Alcott that their failure to pay Plaintiff overtime properly was illegal. Defendants retaliated against Plaintiff for complaining about wage and hour violations.

25. Beginning in January, 2013, Defendants HMSC, Hearst, and CT Post, primarily through their agents Alcott and Koonz, consistently and systematically subjected Plaintiff to disparate treatment and a hostile work environment on account of her age and gender.

26. Such discriminatory treatment includes but is not limited to the following:

    (a) Consistently subjecting Plaintiff to hyper-scrutiny and criticism that was excessive and/or unwarranted;

    (b) Consistently subjecting Plaintiff to berating and demeaning comments;

(c) Imposing productivity standards on Plaintiff that were more demanding than those imposed on younger and/or male co-workers, in order to lay the foundation for illegal disciplinary action against her.

(d) Subjecting Plaintiff to unwarranted performance improvement plans that (1) were increasingly harsh, (2) imposed unreasonable standards that were impossible for Plaintiff to achieve in a forty hour work week, and (3) threatened Plaintiff with termination of employment. The "standards" imposed were discriminatory in nature in that they were not imposed on younger and male co-workers.

27. Defendant Alcott directly informed Plaintiff in blunt fashion that he "know[s] how to make" Plaintiff's "life difficult" and that he intended to do so.

28. On at least four occasions, Defendant Alcott placed his hands on Plaintiff when giving her directives or criticism. Plaintiff objected on every occasion to this unwelcome touching. This physical contact was unwelcome, demeaning, threatening, and a further manifestation of the discriminatory and retaliatory treatment to which Plaintiff was subjected.

29. On another occasion, while Plaintiff was sitting at her desk, Defendant Alcott placed his hands on the arm rests of Plaintiff's chair and spun her around, trapping her in her chair by his arms and began berating her in a condescending fashion with his face inches from Plaintiff's face.

30. Based on the foregoing, Plaintiff filed a charge of discrimination on September 24, 2013 asserting claims under the Connecticut Fair Employment Practices Act, the Age Discrimination in Employment Act, and Title VII of the Civil Rights Act of 1964. Said charges were subsequently assigned charge numbers CCHRO No. 1420106 and EEOC No. 16A-2013-01478.

31. Following the filing of her charge of discrimination with the CHRO and the EEOC, Defendants intensified their harassment of Plaintiff in the forms of hyper-scrutiny,

monitoring her, falsely accusing her of misconduct, and adding new and unreasonable work requirements.

32. On October 18, 2013, Plaintiff was called into a meeting with John Alcott and Brian Koonz. The meeting was disciplinary in nature in that it was called to review a performance improvement plan upon which she was placed. During the meeting, Plaintiff was informed that she could not have a witness present. Plaintiff informed Defendant Alcott and Defendant Koonz that, since she did not have a witness, she would be recording the meeting. Defendant Alcott then asked Plaintiff directly whether she had "filed a legal action" against the Company. Defendant Alcott stated that he did not know what the policy was with regard to recording meetings, he had to speak with Company lawyers and would let Plaintiff know. Defendant Alcott then stated that the meeting would be suspended.

33. On October 25, 2013, Plaintiff was called into another meeting with Defendants Alcott and Koonz. Plaintiff again informed Defendants Alcott and Koonz that she would be recording the meeting and began recording the meeting. Defendant Alcott advised Plaintiff that it was against Company policy to record the meeting, and that he had a legal opinion on that from Hearst Legal. While still recording, Plaintiff asked Defendant Alcott where the policy was and what it said. Plaintiff also expressed concern about not being able to have a witness present. Defendant Alcott continued to press Plaintiff to turn off the recording, and advised her that if she did not do so by the count of three that she could potentially be considered insubordinate. Defendant Alcott thereupon started counting to three at which point Plaintiff said "Ok, Ok, I'm turning it off," and did so. Defendant Alcott said "thank you."

34. After turning off the recorder, Defendant Alcott stated "this is a private company. There is no union here. This is the way we've been told to do this by our company lawyers."

35. Thereafter, while still in the meeting, Defendant Alcott observed Plaintiff taking contemporaneous notes, and asked her what she wrote. Plaintiff read her notes to him and he said that he was "uncomfortable" with her note-taking and then advised Plaintiff that "this meeting is over." He also reiterated that there was "no union" at the company and stated to Plaintiff: "you have no rights."

36. On October 30, 2013, Plaintiff was called into a meeting with John Alcott and Barbara "Bobbie" Roessner, Executive Editor of the Connecticut Post. Ms. Roessner asked if she could hear the recording, whereupon Plaintiff played it for her. She then said that, based on the recording, Plaintiff was insubordinate and was "hereby terminated."

37. After being informed that she was terminated, Plaintiff said, "OK, I will be going now." Ms. Roessner responded to Plaintiff: "you will not be going anywhere, give me the phone." Plaintiff declined to give Ms. Roessner her phone because it was Plaintiff's personal phone. Ms. Roessner then said that she would call the information technology employees to retrieve the recording from Plaintiff's phone. Plaintiff said that she would not let the phone out of her custody and, because she had been terminated she wanted to leave right away. Ms. Roessner again stated that Plaintiff could not leave. Plaintiff then got out of her chair to leave, and began heading for the door when Defendant Alcott got out of his chair, walked to the door—which was ajar—whereupon he closed it completely, and then stood in front of the door with his arms folded. Plaintiff was held against her will.

38. Towards the end of the meeting, Ms. Roessner ordered Plaintiff to "email" her the recording. Planitiff attempted to do so twice but got the notice that the email could not be sent. Ms. Roessner then said "I am calling HR up here now." Ms. Roessner said "you better save that because I want it and our lawyers will want it."

39. A few minutes later, during which Plaintiff continued to be held against her will, a human resources representative showed up and Defendant Alcott moved away from the door to let her in. The human resources representative, Cheri Panzica, then stated, in sum and substance, "we would like to do this calmly and quietly" and "are we going to have a scene here?" to which Plaintiff responded "not by me."

40. After further discussion, Ms. Panzica escorted Plaintiff back to her desk to supervise Plaintiff pack up her belongings, after which Ms. Panzica escorted Plaintiff from the building.

**COUNT ONE:** **VIOLATION OF THE FAIR LABOR STANDARDS ACT (as against Defendants HMSC, Hearst, and CT Post)**

41. Based on the foregoing, Defendants violated the Fair Labor Standards Act ("FLSA").

42. During Plaintiff's employment with Defendants, due to working "off the clock," Plaintiff regularly worked more than the hours reported on her timesheets each week.

43. These additional weekly hours were worked with the full knowledge and encouragement of Defendants, who on numerous occasions warned Plaintiff that her time sheets must only "show" forty hours.

44. Defendants failed to compensate Plaintiff for these "off the clock" overtime hours in violation of the FLSA.

45. Defendants also improperly altered Plaintiff's time sheets in order to deprive her of overtime compensation, in further violation of the FLSA.

46. Lastly, Defendants impermissibly exchanged "overtime hours" for "comp time" in different pay periods, in further violation of the FLSA.

47. Defendants' failure to pay Plaintiff overtime at the rate of one and one-half times her regular hourly rate for all hours worked in excess of forty (40) per week was willful.

48. By virtue of the above, Defendant violated the FLSA.

49. As a result of Defendants' willful violation of FLSA, Plaintiff is entitled to compensation for all overtime hours worked computed at one and one-half times her regular hourly rate, liquidated damages, attorneys' fees and costs.

**COUNT TWO:  VIOLATION OF THE CONNECTICUT MINIMUM WAGE ACT**
**(as against Defendants HMSC, Hearst, and CT Post)**

50. Based on the foregoing, Defendants violated the Connecticut Minimum Wage Act ("CMWA").

51. During Plaintiff's employment with Defendants, due to working "off the clock," Plaintiff regularly worked more than the hours reported on her timesheets each week.

52. These additional weekly hours were worked with the full knowledge and encouragement of Defendants, who on numerous occasions warned Plaintiff that her time sheets must only "show" forty hours.

53. Defendants failed to compensate Plaintiff for these "off the clock" overtime hours in violation of the CMWA.

54. Defendants also improperly altered Plaintiff's time sheets in order to deprive her of overtime compensation, in further violation of the CMWA.

55. Lastly, Defendants impermissibly exchanged "overtime hours" for "comp time" in different pay periods, in further violation of the CMWA.

56. Defendants' failure to pay Plaintiff overtime at the rate of one and one-half times her regular hourly rate for all hours worked in excess of forty (40) per week was unreasonable.

57. By virtue of the above, Defendants violated the CMWA.

58. As a result of Defendants' willful violation of CMWA, Plaintiff is entitled to compensation for all overtime hours worked computed at one and one-half times her regular hourly rate, double damages, attorneys' fees and costs.

**COUNT THREE: RETALIATION IN VIOLATION OF FAIR LABOR STANDARDS ACT (as against Defendants HMSC, Hearst, and CT Post)**

59. Based on the foregoing, Defendants retaliated against Plaintiff in violation of the Fair Labor Standards Act.

60. Plaintiff's complaints regarding being required to work "off the clock" and regarding the unauthorized altering of her time sheets were reported to Defendants.

61. Thereafter, Defendants engaged in acts of retaliation against Plaintiff, including, but not limited to, terminating Plaintiff's employment on October 30, 2013.

62. Plaintiff engaged in protected activity under the FLSA.

63. Defendants had knowledge of Plaintiff's protected activity.

64. Defendants took adverse actions against Plaintiff after her protected activity, and there is a causal connection between Plaintiff's protected activity and Defendants' adverse actions against Plaintiff for that protected activity.

65. Defendants' violation of the FLSA in retaliating against Plaintiff was willful.

66. Plaintiff has sustained damages as a result of Defendants' willful violation of the FLSA, including, but not limited to, lost compensation and benefits, liquidated damages, attorney's fees and costs.

**COUNT FOUR: HARASSMENT AND DISCRIMINATION IN VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT OF 1967, 29 U.S.C. §§ 621-634 (as against Defendants HMSC, Hearst, and CT Post)**

67. Based on the foregoing, Plaintiff was discriminated against in the terms and conditions of her employment on the basis of her age in violation of the ADEA, 29 U.S.C. §§ 621-634.

68. Defendants discriminated against Plaintiff by harassing her, subjecting her to disparate treatment, and ultimately terminating her employment.

69. The aforementioned actions on the part of Defendants towards Plaintiff were intentional in that they were willful, wanton, and/or were taken in reckless disregard of Plaintiff's rights, thereby entitling Plaintiff to liquidated damages under the provisions of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621-634.

70. As a result of the Defendants' unlawful conduct, Plaintiff has suffered damages, including, but not limited to, lost wages and benefits, compensatory damages, economic damages, emotional distress, loss of enjoyment of life, and loss of enjoyment of profession.

71. As a further result of the actions of Defendants, Plaintiff has incurred and will continue to incur attorneys' fees and costs in pursuing this action.

**COUNT FIVE: HARASSMENT AND DISCRIMINATION ON ACCOUNT OF AGE IN VIOLATION OF CONN. GEN. STAT. §46a-60, *et. seq.* (as against Defendants HMSC, Hearst, CT Post, Alcott and Koonz)**

72. Based on the foregoing, Plaintiff was discriminated against in the terms and conditions of her employment on the basis of her age in violation of the CFEPA, Conn. Gen. Stat. §46a-60, *et seq*.

73. Defendant discriminated against Plaintiff by harassing her, subjecting her to disparate treatment, and ultimately terminating her employment.

74. The aforementioned actions on the part of Defendants towards Plaintiff were intentional in that they were willful, wanton, and/or were taken in reckless disregard of Plaintiff's rights.

75. In addition, Defendants Koonz and Alcott aided and abetted in the discriminatory practices and actions taken against Plaintiff, in violation of Conn. Gen. Stat. Sect 46a-60(a)(5) and are thus liable for the discrimination that occurred.

76. As a result of the Defendants' unlawful conduct, Plaintiff has suffered damages, including, but not limited to, lost wages and benefits, compensatory damages, economic damages, emotional distress, loss of enjoyment of life, and loss of enjoyment of profession.

77. As a further result of the actions of Defendant, Plaintiff has incurred and will continue to incur attorneys' fees and costs in pursuing this action.

**COUNT SIX:** **HARASSMENT AND DISCRIMINATION BASED ON GENDER IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, as amended, 42 U.S.C. § 2000e** *et seq.* **(as against Defendants HMSC, Hearst, and CT Post)**

78. Based on the foregoing, Plaintiff was harassed, discriminated against, subjected to disparate treatment and ultimately terminated because of her gender in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq.*

79. Said acts of Defendants were made with malice and reckless disregard of Plaintiff's protected civil rights in violation of Title VII.

80. As a result of the Defendants' unlawful conduct, Plaintiff has suffered damages, including, but not limited to, lost wages and benefits, compensatory damages, economic damages, emotional distress, loss of enjoyment of life, and loss of enjoyment of profession

81. As a further result of the actions of Defendants, Plaintiff has incurred and will continue to incur attorneys' fees and costs in pursuing this action.

**COUNT SEVEN:** **HARASSMENT AND DISCRIMINATION ON ACCOUNT OF GENDER IN VIOLATION OF CONN. GEN. STAT. §46a-60,** *et. seq.* . **(as against Defendants HMSC, Hearst, CT Post, Alcott and Koonz)**

82. Based on the foregoing, Plaintiff was harassed, discriminated against, subjected to disparate treatment and ultimately terminated because of her gender in violation of the CFEPA, Conn. Gen. Stat. §46a-60, *et seq.*

83. In addition, Defendants Koonz and Alcott aided and abetted in the discriminatory practices and actions taken against Plaintiff, in violation of Conn. Gen. Stat. Sect 46a-60(a)(5) and are thus liable for the discrimination that occurred.

84. The aforementioned actions on the part of Defendants towards Plaintiff were intentional in that they were willful, wanton, and/or were taken in reckless disregard of Plaintiff's rights.

85. As a result of the Defendants' unlawful conduct, Plaintiff has suffered damages, including, but not limited to, lost wages and benefits, compensatory damages, economic damages, emotional distress, loss of enjoyment of life, and loss of enjoyment of profession.

86. As a further result of the actions of Defendants, Plaintiff has incurred and will continue to incur attorneys' fees and costs in pursuing this action.

**COUNT EIGHT:** **RETALIATION IN VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT, 29 USC SECTION 621** *et seq.* **(as against Defendants HMSC, Hearst, and CT Post)**

87. Based on the foregoing, Defendants retaliated against Plaintiff by subjecting her to adverse treatment and ultimately terminating her employment because she opposed age discrimination and filed a charge of age discrimination with the EEOC, in violation of the ADEA.

88. Defendants' retaliation against Plaintiff was a willful violation of the ADEA, thereby entitling Plaintiff to liquidated damages.

89. As a result of Defendants' actions, Plaintiff has suffered damages, including, but not limited to, lost wages, lost employment benefits, lost promotional opportunities, compensatory damages, emotional distress, humiliation, embarrassment, and loss of enjoyment of life.

90. In addition, Plaintiff has also incurred, and will continue to incur, attorney's fees and costs in pursuing this claim.

**COUNT NINE:** **RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, as amended, 42 U.S.C. § 2000e *et seq.* (as against Defendants HMSC, Hearst, and CT Post**)

91. Based on the foregoing, Defendants retaliated against Plaintiff by subjecting her to adverse treatment and ultimately terminating her employment because she opposed gender discrimination and filed a charge of gender discrimination with the EEOC, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq.*

92. Said acts of Defendants were made in reckless disregard of Plaintiff's protected civil rights and in violation of Title VII.

93. As a result of the Defendants' unlawful conduct, Plaintiff has suffered damages, including, but not limited to, lost wages and benefits, compensatory damages, economic damages, emotional distress, loss of enjoyment of life, and loss of enjoyment of profession.

94. As a further result of the actions of Defendants, Plaintiff has incurred and will continue to incur attorneys' fees and costs in pursuing this action.

| COUNT TEN: | RETALIATION IN VIOLATION OF THE CONNECTICUT FAIR EMPLOYMENT PRACTICES ACT, CONN. GEN. STAT. § 46a-60 *et seq.* (as against Defendants HMSC, Hearst, CT Post, Alcott, and Koonz) |
|---|---|

95. Based on the foregoing, Defendants retaliated against Plaintiff by subjecting her to adverse treatment and ultimately terminating her employment because she complained about and opposed harassment and discriminatory employment practices in violation of the CFEPA, both internally and through her complaints filed with the CHRO, in violation of the CFEPA.

96. In addition, Defendants Koonz and Alcott aided and abetted in the discriminatory practices and actions taken against Plaintiff, in violation of Conn. Gen. Stat. Sect 46a-60(a)(5) and are thus liable for the retaliation that occurred.

97. Defendants retaliated against Plaintiff with malice or reckless indifference to Plaintiff's rights under the law.

98. As a result of Defendants' actions, Plaintiff has suffered damages, including, but not limited to, lost wages, lost employment benefits, lost promotional opportunities, compensatory damages, emotional distress, humiliation, embarrassment, and loss of enjoyment of life.

99. In addition, Plaintiff has also incurred, and will continue to incur, attorney's fees and costs in pursuing this claim.

| COUNT ELEVEN: | INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (as against Defendants HMSC, Hearst, CT Post, and Alcott) |
|---|---|

100. Based on the foregoing, Defendant Alcott, acting within the scope of his duties and authority as a manager and in furtherance of his employer's business, intended to inflict emotional distress upon Plaintiff, or knew or should have known that emotional distress was the likely result of his conduct.

101. Defendants' conduct towards Plaintiff was extreme and outrageous, in that it was beyond the bounds of decency tolerated in a civilized society.

102. Defendants' conduct caused Plaintiff to suffer emotional distress, and said emotional distress was severe.

103. As a result of Defendants' conduct, Plaintiff is also entitled to punitive damages.

**COUNT TWELVE: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS (as against Defendants HMSC, Hearst, CT Post, and Alcott)**

104. Based on the foregoing, with specific reference to Paragraph 16, Defendants engaged in unreasonable conduct toward Plaintiff.

105. Defendants should have realized that its conduct involved an unreasonable risk of causing Plaintiff emotional distress.

106. Defendants' conduct toward Plaintiff caused Plaintiff to suffer emotional distress, thereby entitling Plaintiff to damages.

**COUNT THIRTEEN: BATTERY (as against Defendants HMSC, Hearst, CT Post, and Alcott)**

107. Based on the foregoing, on a number of occasions, Defendant Alcott, acting within the scope of his duties and authority as a manager and in furtherance of his employer's business, grabbed Plaintiff by her arms and shoulders, once by her chin, and grabbed the arms of the chair in which she was seated.

108. Defendants thus intentionally and without consent made physical contact with Plaintiff's person that would be offensive to a reasonable person.

109. Defendants' battery of Plaintiff caused Plaintiff physical and emotional injury.

110. As a result of Defendants' actions, Plaintiff is entitled to damages.

**COUNT FOURTEEN:** **FALSE IMPRISONMENT (as against Defendants HMSC, Hearst, CT Post, Roessner, and Alcott)**

111. Based on the foregoing, Defendants Roessner and Alcott, acting within the scope of their duties and authority as managers and in furtherance of their employer's business, committed acts that unlawfully restrained Plaintiff's physical liberty. Furthermore, Defendants' acts were committed for the purpose of imposing a confinement, or with knowledge that such a confinement would, to a substantial certainty, result from the conduct.

112. The aforementioned conduct was intentional in that it was willful, wanton, and/or was taken with reckless disregard of Plaintiff's rights.

113. As a result of the aforementioned unlawful acts of Defendants, Plaintiff has suffered damages, including emotional distress.

**DEMAND FOR RELIEF**

**WHEREFORE**, the Plaintiff claims JUDGMENT against Defendants and, Compensatory damages, including, but not limited to,

1. Lost wages, lost promotional opportunities, lost employment benefits, loss of enjoyment of life, loss of enjoyment of profession, emotional distress, humiliation, and embarrassment;

2. Damages for personal physical injuries;

3. Back Pay;

4. Reinstatement, or Front Pay;

5. Liquidated damages;

6. Punitive damages;

7. Interest;

8. Attorney's fees;

9. Such other relief as in law or equity may pertain.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury.

PLAINTIFF, MariAn Gail Brown

By: __/s/ William G. Madsen_____
William G. Madsen (ct09853)
Madsen, Prestley, & Parenteau LLC
402 Asylum Street
Hartford, CT 06103
Tel. (860) 246-2466   Fax. (860) 246-1794
wmadsen@mppjustice.com
Attorneys for Plaintiff