**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

—————————————————————— :
                                                      :
**MARIAN GAIL BROWN,**                   :
                                                      :
                              Plaintiff,      :      **CIVIL ACTION NO.:**
                                                      :      **3:14-cv-01220-VLB**
         **v.**                                     :
                                                      :
**HEARST CORPORATION, HEARST**    :
**MEDIA SERVICES CONNECTICUT,**      :
**LLC, JOHN ALCOTT, BARBARA**        :
**ROESSNER, AND BRIAN KOONZ,**      :      **December 1, 2014**
                                                      :
                                                      :
                      **Defendants.** :
—————————————————————— :

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**

**Jonathan R. Donnellan (CT29106)**
**Adam Colón (CT29651)**
**Shari Goldsmith (Of Counsel)**
   **THE HEARST CORPORATION**
   **Office of General Counsel**
**300 West 57th Street, 40th Floor**
**New York, New York  10019**

***Attorneys for Defendants***

**ORAL ARGUMENT REQUESTED**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................. 1

RELEVANT ALLEGATIONS IN THE COMPLAINT ....................................... 3

PROCEDURAL HISTORY .............................................................................. 5

ARGUMENT ................................................................................................... 6

   I.    Despite Her Amendments, Plaintiff Still Fails To State An Overtime Claim
      Under The FLSA Or The CMWA (Counts One And Two) Because She Does
      Not Allege That She Worked Over 40 Hours In A Week For Which She Was
      Not Compensated. ............................................................................... 7

   II.   Plaintiff's FLSA Retaliation Claim (Third Count) Must Be Dismissed
      Because Plaintiff's Internal Complaint To Her Supervisors Does Not
      Constitute FLSA Protected Activity. .................................................. 10

   III.  Plaintiff's Claims For Age Harassment (Counts Four And Five) Must Be
      Dismissed Because Plaintiff Fails To Plausibly Allege A Hostile Work
      Environment Based On Her Age. ....................................................... 11

   IV.  Plaintiff's Claims For Gender Discrimination And Harassment (Counts Six
      And Seven) Must Be Dismissed Because Plaintiff Fails To Plead Plausible
      Claims Of Discrimination Or Harassment Based On Her Gender ............... 15

       A.    Plaintiff Has Not Plead A Plausible Gender Harassment Claim
            Because She Has Not Alleged Conduct That Is Severe Or Pervasive,
            And She Has Not Plausibly Alleged That The Conduct At Issue Was
            Because Of Her Gender ....................................................... 15

       B.    Plaintiff Has Not Plead A Discrimination Claim Based On Her
            Gender ................................................................................. 17

   V.   Plaintiff's Claim For Intentional Infliction of Emotional Distress (Count
      Eleven) Must Be Dismissed Because She Has Not Plead A Plausible Claim
      Of Extreme Or Outrageous Conduct .................................................. 17

   VI.  Plaintiff's Claim For Negligent Infliction of Emotional Distress (Count
      Twelve) Must Be Dismissed Because Plaintiff Has Not Plead A Plausible
      Claim Of Unreasonable Conduct During The Termination Process ........... 20

**VII.    Plaintiff's Claim For False Imprisonment (Count Fourteen) Must Be Dismissed Because Plaintiff Has Not Plead A Plausible Claim That She Was Unlawfully Restrained ........................................................................ 21**

**CONCLUSION .............................................................................................. 23**

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alfano v. Costello,*
   294 F.3d 365 (2d Cir. 2001) ..................................................................... 14

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ................................................................................... 6

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) .................................................................................. 6

*Bryant v. Greater New Haven Transit Dist.,*
   No. 3:12-cv-00071-VLB, 2014 WL 1247994 (D. Conn. Mar. 25, 2014)
   (J. Bryant) ........................................................................................... 11, 12

*Carrol v. Allstate Ins. Co.,*
   815 A.2d 119 (Conn. 2003) ................................................................. 19, 20

*Davis v. Liberty Mut. Ins. Co.,*
   218 F. Supp. 2d 256 (D. Conn. 2002) ...................................................... 20

*Dejesus v. HF Mgmt. Servs., LLC,*
   726 F.3d 85 (2d Cir. 2013), *cert. denied,* 134 S. Ct. 918 (2014)......................... 8, 9

*DeLaurentis v. City of New Haven,*
   597 A.2d 807 (Conn. 1991) ...................................................................... 18

*Fleming v. MaxMara USA, Inc.,*
   371 F. App'x 115 (2d Cir. 2010) .............................................................. 13

*Garcia v. College of Staten Island,*
   No. 11 CV 2252 (KAM)(LB), 2012 WL 3930448 (E.D.N.Y. July 31,
   2012).......................................................................................................... 12

*Gorzynski v. JetBlue Airways Corp.,*
   596 F.3d 93 (2d Cir. 2010) ....................................................................... 16

*Huff v. West Haven Bd. of Educ.,*
   10 F. Supp. 2d 117 (D. Conn. 1998)......................................................... 20

*Landers v. Quality Commc'ns, Inc.,*
   No. 12-15890, 2014 WL 5840039 (9th Cir. Nov. 12, 2014) ....................... 9

*Lore v. City of Syracuse,*
   583 F. Supp. 2d 345 (N.D.N.Y. 2008) ..................................................... 14

*Michel v. Bridgeport Hosp.*,
   No. 116015195, 2011 WL 1176885 (Conn. Super. Ct. Mar. 7, 2011) ........ 18, 21, 22

*Miner v. Town of Cheshire*,
   126 F. Supp. 2d 184 (D. Conn. 2000)...................................................................... 18

*Mullins v. City of N.Y.*,
   626 F.3d 47 (2d Cir. 2010) ...................................................................................... 10

*Murray-Dahnir v. Loews Corp.*,
   No. 99 CIV 9057 LMM, 1999 WL 639699 (S.D.N.Y. Aug. 23, 1999)....................... 14

*Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*,
   723 F.3d 192 (2d Cir. 2013) ............................................................................. 7, 8, 9

*Onorato v. Timeddx, LLC.*,
   No. 3:13CV1494(HBF), 2014 WL 4365076 (D. Conn. Sept. 2, 2014) .................... 11

*Palmer-Williams v. Yale New Haven Hosp.*,
   No. 3:08CV1526, 2011 WL 1226022 (D. Conn. Mar. 27, 2011), *aff'd*,
   477 F. App'x 855 (2d Cir. 2012) ............................................................................. 13

*Parete v. Stop & Shop Supermarket Co. LLC*,
   No. 3:10CV625(AVC), 2013 WL 1192615 (D. Conn. Mar. 22, 2013) ............... 10, 11

*Parsons v. United Techs. Corp.*,
   700 A.2d 655 (Conn. 1997)...................................................................................... 21

*Patino v. Birken Mfg. Co.*,
   41 A.3d 1013 (Conn. 2012)...................................................................................... 11

*Pruell v. Caritas Christi*,
   678 F.3d 10 (1st Cir. 2012) ....................................................................................... 9

*Richardson v. Costco Wholesale Corp.*,
   169 F. Supp. 2d 56 (D. Conn. 2001)................................................................... 8, 22

*Roberts v. Circuit-Wise, Inc.*,
   142 F. Supp. 2d 211 (D. Conn. 2001)......................................................... 17, 18, 19

*Sacco v. Paradigm New Haven Health Care, LLC*,
   No. 3:12CV1207(WWE), 2013 WL 2321709 (D. Conn. May 28, 2013) ................. 18

*Tracy v. New Milford Public Schs.*,
   922 A.2d 280 (Conn. App. Ct. 2007), *cert. denied*, 931 A.2d 935
   (Conn. 2007) ........................................................................................................... 19

iv

Defendants Hearst Corporation ("Hearst"), Hearst Media Services Connecticut, LLC ("Hearst Media Services Connecticut"), John Alcott, Barbara Roessner and Brian Koonz (collectively "Defendants") respectfully submit this Memorandum of Law in support of their motion for partial dismissal of Plaintiff's Amended Complaint ("Amended Complaint" or "Am. Compl.") pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

## PRELIMINARY STATEMENT

Plaintiff is a former reporter for Hearst Media Services Connecticut, d/b/a "Connecticut Post."   Her employment was terminated in October 2013 for insubordination resulting from her refusal to stop recording a meeting in violation of company policy.   In her Amended Complaint, Plaintiff claims that her termination constituted age and gender discrimination and retaliation.   She also purports to bring claims for age and gender harassment, failure to pay overtime, intentional and negligent infliction of emotional distress, and false imprisonment. In all, Plaintiff's Amended Complaint asserts fourteen counts for relief; her post-amendment pleadings, however, still consist almost entirely of speculation, unfounded assumptions and legal conclusions.   Indeed, because the facts of Plaintiff's employment and termination as plead are plainly insufficient to present plausible claims under the statutes for which she seeks relief, Plaintiff attempts to bridge the gap with conclusory allegations that barely, if at all, mimic the elements of a cause of action under these statutes.   In the end, despite Plaintiff's effort, and notwithstanding her amendment of her initial (and similarly deficient) complaint, the factual allegations in her Amended Complaint, even when taken as

true, simply fail to demonstrate plausible claims of unlawful conduct by Defendants.

Specifically, and as discussed in detail below, Plaintiff still has blatantly failed to plead an overtime claim, failing to even plead the basic allegation of such a claim, *i.e.*, that she worked hours over 40 in a week for which she was not paid. The Court must also dismiss with prejudice Plaintiff's FLSA retaliation claim because Plaintiff's alleged protected activity, her internal complaint to her supervisors, is patently insufficient under Second Circuit law as interpreted by this Court. As well, Plaintiff's age and gender harassment claims must be dismissed because Plaintiff has not plausibly alleged an actionable hostile work environment, and furthermore, she has not plead any facts to support her speculative conclusion that her alleged harassment – none of which bears any indicia of age or gender animus – was due to her age or gender. Similarly, Plaintiff cannot sustain her gender discrimination claims because they too are supported solely by her wholly conclusory speculation that productivity and performance standards imposed on her "were not imposed on [] male co-workers." (Am. Compl. ¶ 39.) In fact, Plaintiff's own Amended Complaint identifies a female employee who she claims was (along with a male employee) not subject to those standards, thereby defeating Plaintiff's attempt to state a plausible claim of gender discrimination. In the end, despite her amendment, Plaintiff's Amended Complaint remains deficient and is subject to partial dismissal.

2

## RELEVANT ALLEGATIONS IN THE AMENDED COMPLAINT[1]

Hearst Media Services Connecticut employed Plaintiff as a staff writer, investigative reporter and columnist.  (*See* Am. Compl. ¶ 24.)   Plaintiff's immediate supervisor was Defendant Metro Editor Brian Koonz ("Koonz"), who reported to Defendant John Alcott ("Alcott"), Assistant Managing Editor for the Connecticut Post.  (*See id.* ¶ 25.)

After October 2012, Plaintiff claims Alcott and Koonz began "assigning Plaintiff additional assignments with short notice" and that she warned Alcott and Koonz "that the additional work would cause her to work overtime hours . . . ." (*See id.* ¶¶ 28-29.)  Alcott and Koonz allegedly told Plaintiff "they did not want to see any overtime on her time sheets."  (*See id.* ¶ 29.)  Plaintiff claims that due to pressure from Alcott and Koonz to not work overtime, she reported five hours less of work on her timesheet.  (*See id.* ¶ 31.)  Plaintiff also claims she worked eleven overtime hours and was told to take "comp time" during a different week. (*See id.* ¶ 36.)  Plaintiff allegedly complained to Alcott and Koonz that their failure to pay her overtime properly was illegal.  (*See id.* ¶ 37.)

Beginning in January 2013, Plaintiff claims that Alcott and Koonz "consistently and systematically subjected [her] to disparate treatment and a hostile work environment on account of her age and gender" by "subjecting [her] to hyper-scrutiny and criticism that was excessive and/or unwarranted," making "berating and demeaning comments," "monitoring her," "falsely accusing her of misconduct," "[i]mposing productivity standards on [her] that were more

---

[1] For purposes of this motion only, Defendants accept Plaintiff's factual allegations as true.

demanding than those imposed on younger and/or male co-workers," and subjecting her to "unreasonable [performance] standards." (*See id.* ¶¶ 38-39, 48.) Plaintiff claims two reporters in their twenties, one male and one female, were "both given several months to work on one article . . . ." (*See id.* ¶ 42.) Alcott allegedly also told Plaintiff to "get with the program," that "this is the 21st century" and "directly informed Plaintiff in blunt fashion that he 'knows how to make' Plaintiff's 'life difficult' and that he intended to do so." (*See id.* ¶¶ 43-44.) Plaintiff also claims that on "at least four occasions, Defendant Alcott placed his hands on Plaintiff when giving her directives or criticism." (*See id.* ¶ 45.) "On another occasion, while Plaintiff was sitting at her desk, Defendant Alcott [allegedly] placed his hands on the arm rests of Plaintiff's chair and spun her around, trapping her in her chair by his arms and began berating her in a condescending fashion . . . ." (*See id.* ¶ 46.)

During a meeting on October 25, 2013, Plaintiff was told that it was against "Company policy to record the meeting"; she was "continu[ally] [told] to turn off the recording . . . ." (*See id.* ¶ 50.) After Defendant Alcott was forced to "count[] to three," Plaintiff stopped recording. (*See id.*)

On October 30, 2013, Plaintiff was called into a meeting with Alcott and Defendant Barbara Roessner ("Roessner") where Plaintiff was terminated for insubordination resulting from her refusal to stop recording a meeting in violation of company policy. (*See id.* ¶ 53.) Plaintiff claims she was told she could not leave the conference room until she provided Roessner with a copy of the recording and that Alcott closed the door and stood in front of it "with his arms

4

folded." (*See id.* ¶ 54.)  A human resources representative then escorted Plaintiff from the building.  (*See id.* ¶ 57.)

## PROCEDURAL HISTORY

On August 22, 2014, Plaintiff filed a complaint in this Court, alleging claims of age and gender discrimination, harassment and retaliation, failure to pay overtime, intentional and negligent infliction of emotional distress, and false imprisonment against Hearst Corporation, Hearst Media Services Connecticut, LLC, Hearst CT Post, LLC, John Alcott, Barbara Roessner and Brian Koonz. (*See* ECF No. 1.)  On October 15, 2014, Defendants moved to dismiss ten (out of fourteen) causes of action asserted in Plaintiff's complaint. (*See* ECF No. 25.)  On November 5, 2014, the date on which Plaintiff's response to Defendants' motion to dismiss was due, Plaintiff instead moved for an extension of time to respond. (*See* ECF No. 28.)  At the same time, Plaintiff also moved for leave to amend the complaint, attaching a proposed amended complaint.  (*See* ECF No. 29.)  In her Amended Complaint, Plaintiff added allegations regarding her claims of alleged overtime violations and alleged age and gender harassment and discrimination, and also added allegations regarding Defendant Hearst's corporate relationship with Defendant Hearst Media Services Connecticut. (*See* Am. Compl. ¶¶ 7-11, 27-33, 35, 40-43.)  Plaintiff's Amended Complaint does not contain any new allegations in support of her claims of alleged intentional and negligent infliction of emotional distress or false imprisonment.

On November 10, 2014, the Court denied as moot Plaintiff's motion to amend the complaint as "Federal Rule of Civil Procedure 15(a)(1)(B) allows

Plaintiff to amend their complaint once as a matter of course within '21 days after service of a motion under Rule 12(b).'"  (*See* ECF No. 31.)  On November 10, 2014, the Court also denied as moot Defendants' motion to dismiss and Plaintiff's motion of an extension of time to respond to Defendants' motion to dismiss.  (*See* ECF Nos. 33-34.)  Lastly, the Court directed the Clerk to enter Plaintiff's amended complaint on the docket.  (*See* ECF No. 32.)

## ARGUMENT

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Although Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," the plausibility standard demands that a complaint show "more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678.  Rather, the "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ."  *Twombly*, 550 U.S. at 555.  In short, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id.* (internal quotation marks, citation, and alteration omitted).

Here, despite her attempts to correct her initial deficient pleading, Plaintiff's Amended Complaint is still susceptible to partial dismissal because

she has failed to assert a plausible claim for relief for eight (out of fourteen) causes of action in her lawsuit: (1) an overtime violation of the Fair Labor Standards Act ("FLSA") (Count One); (2) an overtime violation of the Connecticut Minimum Wage Act ("CMWA") (Count Two); (3) retaliation in violation of the FLSA (Count Three); (4) harassment in violation of the Age Discrimination Employment Act ("ADEA") (Count Four); (5) age harassment in violation of the Connecticut Fair Employment Practices Act, Conn. Gen. Stat. § 46a-60, *et. seq.* ("CFEPA") (Count Five); (6) gender harassment and discrimination in violation of Title VII of the Civil Rights Act ("Title VII") (Count Six); (7) gender harassment and discrimination in violation of the CFEPA (Count Seven); (8) intentional infliction of emotional distress (Count Eleven); (9) negligent infliction of emotional distress (Count Twelve); and (10) false imprisonment (Count Fourteen).  Instead, Plaintiff alleges general and vague facts buttressed by hollow legal conclusions.  Because Plaintiff's allegations fall far short of the plausibility standard, these claims must be dismissed.[2]

I.    **Despite Her Amendments, Plaintiff Still Fails To State An Overtime Claim Under The FLSA Or The CMWA (Counts One And Two) Because She Does Not Allege That She Worked Over 40 Hours In A Week For Which She Was Not Compensated.**

"[T]o survive a motion to dismiss, Plaintiff[] must allege sufficient factual matter to state a plausible claim that [she] worked compensable overtime in a workweek longer than 40 hours."  *Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 200 (2d Cir. 2013) (the plausibility standard requires the

---

[2] Defendants seek dismissal of these claims against all named defendants in the Amended Complaint.

plaintiff "sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of 40 hours.") (internal citation and quotation marks omitted).[3]   In other words, "[t]o plead a plausible [] overtime claim, Plaintiff[] must provide sufficient detail about the length and frequency of [her] unpaid work to support a reasonable inference that [she] worked more than forty hours in a given week." *Id.* at 201.   Mere conclusory allegations and legal conclusions mirroring the FLSA are insufficient to state a plausible overtime claim.  *See Dejesus v. HF Mgmt. Servs., LLC,* 726 F.3d 85, 89 (2d Cir. 2013), *cert. denied*, 134 S. Ct. 918 (2014).

Here, Plaintiff's allegations in the Amended Complaint still lack the necessary and basic factual foundation of an overtime claim – that she worked more than 40 hours in a week and was not compensated for those hours.  Plaintiff alleges that she was given "additional work [that] would cause her to work overtime hours, i.e., more than forty hours per week," and that she "consistently and regularly worked more than forty hours per week and was not paid overtime compensation for hours in excess of forty per week."  (*See* Am. Compl. ¶¶ 29, 30.) Plaintiff further alleges that on one particular day, Plaintiff "reported from the field until 1am" and that on another occasion she worked eleven hours of overtime and was told to take "comp time" in a different week. (*See id.* ¶¶ 31, 36.) While they may be more detailed than in her initial Complaint, these allegations are still deficient.  For instance, Plaintiff's allegations that she worked until 1 am

_____

[3] Connecticut courts look to FLSA interpretations when analyzing Connecticut wage and hour laws.  *See Richardson v. Costco Wholesale Corp.,* 169 F. Supp. 2d 56, 60 n.1 (D. Conn. 2001) (finding "[t]o interpret the Connecticut wage and hour statutes, Connecticut courts look to authorities relevant to the FLSA").

on a single occasion and did not record five hours of work as a result fails to meet the pleading standard because Plaintiff does not allege: a start time for the day in question; that five hours of unreported time resulted in unpaid overtime; or that she even worked over 40 hours in that same week.  (*See id.* ¶¶ 31.)  Further, her claim regarding working 11 hours of overtime and being told to take "comp time" fails, as Plaintiff does not allege she was not compensated for these 11 hours of overtime.  (*See* Am. Compl. ¶ 36.)   To be sure, Plaintiff's allegations – even as embellished by her amendments – still mirror the same allegations the Second Circuit has consistently found insufficient to plead an FLSA overtime claim.  *See Dejesus*, 726 F.3d at 89 (dismissing the overtime claim because plaintiff's allegations "that in 'some or all weeks' she worked more than 'forty hours' a week without being paid '1.5' times her rate of compensation" failed to meet the plausibility standard for an FLSA overtime claim); *Nakahata*, 723 F.3d at 201 (dismissing the overtime claims because plaintiff's allegations failed to "provide sufficient detail about the length and frequency of their unpaid work to support a reasonable inference that they worked more than forty hours in a given week").[4]

---

[4] The First and Ninth Circuits have also found that similar allegations fail to state an FLSA claim.  *See Landers v. Quality Commc'ns, Inc.*, No. 12-15890, 2014 WL 5840039, at *5 (9th Cir. Nov. 12, 2014) (affirming defendants' motion to dismiss and finding that conclusory allegations that merely recite the statutory language of the FLSA insufficient); *Pruell v. Caritas Christi*, 678 F.3d 10, 13 (1st Cir. 2012) (finding allegations that plaintiffs "regularly worked hours over 40 in a week and were not compensated for such time" failed to state an FLSA claim).

Because Plaintiff's allegations lack the requisite detail, they fail on their face to state plausible overtime claims under the FLSA or the CMWA, and therefore, must be dismissed.

**II.   Plaintiff's FLSA Retaliation Claim (Third Count) Must Be Dismissed Because Plaintiff's Internal Complaint To Her Supervisors Does Not Constitute FLSA Protected Activity.**

In order to establish a *prima facie* case of retaliation under the FLSA, Plaintiff must demonstrate: "(1) participation in protected activity known to the defendant, … ; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action."  *Mullins v. City of N.Y.*, 626 F.3d 47, 53 (2d Cir. 2010) (citations omitted). As this Court recently recognized, in the Second Circuit, informal oral complaints to a supervisor <u>do not</u> constitute protected activity under the FLSA and, thus, are not sufficient to establish a *prima facie* case of retaliation.  *See Parete v. Stop & Shop Supermarket Co. LLC*, No. 3:10CV625(AVC), 2013 WL 1192615, at *5 (D. Conn. Mar. 22, 2013) (citing *Lambert v. Genesee Hosp.*, 10 F.3d 46 (2d Cir. 1993) (because the Supreme Court explicitly failed to address whether oral complaints in the private employer context are protected activity, "this court remains bound by that part of the second circuit's holding in *Lambert* that the FLSA 'does not encompass complaints made to a supervisor.'").

Plaintiff's FLSA retaliation claim is still solely based on her allegation that her employment was terminated after she "repeatedly advised Defendants Koonz and Alcott that their failure to pay Plaintiff overtime properly was illegal." (*See* Am. Compl. ¶ 37.)  Because Plaintiff only alleges that she verbally complained to

her supervisors, and not to a government agency, she has not alleged that she engaged in statutorily protected activity.  *See Parete*, 2013 WL 1192615, at *5 (finding no *prima facie* case of retaliation because plaintiff's internal oral complaints to his supervisor did not constitute FLSA protected activity). Therefore, her retaliation claim fails as a matter of law and should be dismissed with prejudice.

### III.   Plaintiff's Claims For Age Harassment (Counts Four And Five) Must Be Dismissed Because Plaintiff Fails To Plausibly Allege A Hostile Work Environment Based On Her Age.

As this Court recently recognized, "[a] hostile work environment, in violation of the ADEA and the CFEPA, occurs where the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  *Bryant v. Greater New Haven Transit Dist.*, No. 3:12-cv-00071-VLB, 2014 WL 1247994, at *14 (D. Conn. Mar. 25, 2014) (J. Bryant) (internal citation and quotation marks omitted).[5]  To establish a hostile work environment, "[a] plaintiff must demonstrate that the incidents were either 'sufficiently continuous and concerted to be considered pervasive, or that a single episode is severe enough'" such that the terms and conditions of the plaintiff's work environment were thereby altered.  *Id.* (internal citations omitted). "Additionally, a plaintiff must show that she was subjected to this hostility

---

[5] "Connecticut antidiscrimination statutes should be interpreted in accordance with federal antidiscrimination laws."  *Patino v. Birken Mfg. Co.*, 41 A.3d 1013, 1022 (Conn. 2012) (internal citation and quotation marks omitted); *see also Onorato v. Timeddx, LLC.*, No. 3:13CV1494(HBF), 2014 WL 4365076, at *2, n.2 (D. Conn. Sept. 2, 2014) ("It is well established that CFEPA claims proceed under the same analysis as ADEA claims.") (internal citation and quotation marks omitted).

because of her membership in a protected class, as an environment which is equally harsh for both young and old is not protected by the civil rights statutes." *Id.* at *14 (internal citation and quotation marks omitted); *see, also, Garcia v. College of Staten Island*, No. 11 CV 2252 (KAM)(LB), 2012 WL 3930448, at *4 (E.D.N.Y. July 31, 2012) ("even when a plaintiff establishes that he was exposed to an objectively and subjectively hostile work environment, he will not have a claim unless he can also demonstrate that the hostile work environment was caused by animus towards him as a result of his membership in a protected class") (internal citation and quotation marks omitted).

Here, Plaintiff alleges actions that, at most, constitute unpleasantness and uncivility, but fall far short of the severity or pervasiveness required to state a plausible hostile work environment claim.   Specifically, Plaintiff describes her "discriminatory treatment" and "hostile work environment" to consist of:

- "hyper-scrutiny and criticism that was excessive and/or unwarranted;"

- "berating and demeaning comments;"

- "demanding" "productivity standards" and "unreasonable" performance standards;

- "monitoring her" and "falsely accusing her of misconduct";

- Alcott's statements that he would make her "life difficult," "to get with the program," and "this is the 21st century"; and

- Alcott's "plac[ing] his hands on [her] when giving her directives or criticism" on "at least four occasions" and that he "placed his hands on the arm rests of [her] chair and spun her around … berating her in a condescending fashion . . . ."

(*See* Am. Compl. ¶¶ 38-39, 43-45, 48.)  None of these allegations indicates a single severe incident, or the presence of a work environment filled with conduct

sufficiently pervasive to show a plausible claim that the terms and conditions of Plaintiff's work environment were altered.  *See, e.g.*, *Fleming v. MaxMara USA, Inc.*, 371 F. App'x 115, 119 (2d Cir. 2010) (finding plaintiff's claims "that defendants wrongly excluded her from meetings, excessively criticized her work, refused to answer work-related questions, arbitrarily imposed duties outside of her responsibilities, threw books, and sent rude emails to her. . . . do not support a finding of a hostile work environment that is pervasive or severe.") (internal citation omitted); *Palmer-Williams v. Yale New Haven Hosp.*, No. 3:08CV1526, 2011 WL 1226022, at *9 (D. Conn. Mar. 27, 2011), *aff'd*, 477 F. App'x 855 (2d Cir. 2012) (finding that plaintiff's claims that her supervisor "was rude to her, subjected her to an unfair evaluation in 2004, and accused her of misconduct … is not so severe or pervasive as to alter the conditions of Plaintiff's employment.").

Moreover, Plaintiff has not provided any factual allegations – other than unsupported conjecture – to suggest that she has a probable claim that this alleged harassing conduct occurred because of her age.  Plaintiff attempts to tie this conduct to her age with her conclusory statement that the productivity and performance standards imposed on her were "more demanding than those imposed on younger [] co-workers" and that "she was expected to be more productive due to her age."  (*See* Am. Compl. ¶¶ 39, 43.)  In support of these assertions, Plaintiff claims that "[s]ubstantially younger [] employees were not held to Defendant Hearst's Editorial Standards requirement of two stories a week," and gives the example of two reporters, "who are both in their twenties,

[and] were both given several months to work on one article . . . ." (*See* Am. Compl. ¶ 42.)   This allegation, however, does not demonstrate that the mistreatment Plaintiff allegedly suffered – all of which is age (and sex) neutral in nature – occurred because of her age, or membership in any other protected category.  *See Murray-Dahnir v. Loews Corp.*, No. 99 CIV 9057 LMM, 1999 WL 639699, at *4 (S.D.N.Y. Aug. 23, 1999) (granting motion to dismiss racial hostile work environment claim based on allegations that "unlike non African-American managers, [Plaintiff] was compelled to work extraordinary hours without proper staffing and support," his "supervisor ceased direct communication with him" and "admonished him publicly and unjustifiably on numerous occasions," and he received a memo with "illegitimate and pretextual criticism"; "[n]one of these alleged acts rise objectively to the level of racial hostility. In fact, the amended complaint fails to allege any acts or comments which are even racial in nature." (internal quotation marks omitted)).   Without specific factual allegations indicating that Plaintiff's alleged harassment was due to her age, she cannot state a plausible age-based hostile work environment claim.  *See Alfano v. Costello*, 294 F.3d 365, 377 (2d Cir. 2001) (recognizing that "many bosses are harsh, unjust, and rude.  It is therefore important in hostile work environment cases to exclude from consideration personnel decisions that lack a linkage or correlation to the claimed ground of discrimination."); *Lore v. City of Syracuse*, 583 F. Supp. 2d 345, 375 (N.D.N.Y. 2008) ("Hostile work environment claims [] are consistently rejected when the plaintiff neglects to plead facts that objectively rise to a level of

hostility *based upon her membership in a protected class* . . . .") (collecting cases).

Because the facts alleged in Plaintiff's Amended Complaint do not plausibly depict an actionable hostile work environment, and because Plaintiff fails to allege any facts to plausibly link the conduct that she complains about to her age or any age-related animus, Plaintiff's claims of age harassment should be dismissed.

**IV.** **Plaintiff's Claims For Gender Discrimination And Harassment (Counts Six And Seven) Must Be Dismissed Because Plaintiff Fails To Plead Plausible Claims Of Discrimination Or Harassment Based On Her Gender.**

Plaintiff's claims that she was harassed, subjected to disparate treatment and terminated because of her gender in violation of Title VII and the CFEPA must be dismissed because she: (a) has not plead sufficient facts to suggest a plausible hostile work environment claim; and (b) has not plead sufficient facts to suggest that her alleged harassment or discrimination had any connection to her gender.

**A.** **Plaintiff Has Not Plead A Plausible Gender Harassment Claim Because She Has Not Alleged Conduct That Is Severe Or Pervasive, And She Has Not Plausibly Alleged That The Conduct At Issue Was Because Of Her Gender.**

Plaintiff's allegations for her hostile work environment claim based on gender are the very same allegations she asserts in support of for her age claim. *See supra*, Section III.  As detailed above, none of these allegations is sufficiently severe on its own, and taken as a whole, they do not indicate the presence of a

work environment containing conduct sufficiently hostile and pervasive to demonstrate a plausible harassment claim.[6]

Similarly, Plaintiff provides only conjecture, and not a single factual allegation, to support her claim that this alleged conduct occurred because of her gender.  Plaintiff's allegations attempting to show linkage between her alleged harassment and her gender are the same conclusory and insufficient assertions she makes regarding her age-based harassment claims – that the productivity and performance standards imposed on her were "more demanding than those imposed on [] male co-workers," and that "male employees were not held to Defendant Hearst's Editorial Standards . . . ." (*See* Am. Compl. ¶¶ 39, 42.)  Here, not only do Plaintiff's unfounded contentions fail to push her speculative harassment pleading over the threshold of plausibility, but incredibly, Plaintiff's own Amended Complaint defeats the probability of showing that her alleged harassment was based on gender; she herself identifies a female employee, Brittany Lyte, who she claims received more favorable treatment.  (*See id.* ¶ 42.)  In sum, Plaintiff identifies purely gender-neutral actions, identifies a female employee was not held to the standards she claims were imposed on her, and then summarily concludes that the reason she was not held to these standards and otherwise harassed is because she is female.  To be sure, such speculative (and contradictory) contentions are plainly insufficient to demonstrate a probable gender-based hostile work environment claim.  *See supra*, Section III.

---

[6] Title VII hostile work environment claims mirror the ADEA.  *See Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 102 (2d Cir. 2010).

For these reasons, Plaintiff's claims of gender harassment should be dismissed.

**B.    Plaintiff Has Not Plead A Discrimination Claim Based On Her Gender.**

As with her hostile work environment claim, Plaintiff's gender discrimination claim is based on conclusory assertions that she suffered disparate treatment that "[was] not imposed on [] male co-workers," and that she was "ultimately terminated because of her gender . . . ." (*See* Am. Compl. ¶¶ 39, 52.)  As noted above, Plaintiff's own Amended Complaint references another female employee who she alleges was subjected to more favorable treatment in terms of the same standards she alleges were imposed on her in a more demanding fashion. (*See id.* ¶ 42.)  Accordingly, Plaintiff's own allegations defeat her conclusory claim that her alleged mistreatment was due to her gender, and, no plausible gender-based discrimination claim can be gleaned from Plaintiff's speculative – and contradictory – pleading.   Accordingly, the Court should dismiss Plaintiff's claims of gender discrimination because her suppositional allegation of gender-based mistreatment is insufficient to state a plausible claim.

**V.    Plaintiff's Claim For Intentional Infliction of Emotional Distress (Count Eleven) Must Be Dismissed Because She Has Not Plead A Plausible Claim Of Extreme Or Outrageous Conduct.**

"[T]o state a cause of action for intentional infliction of emotional distress, a plaintiff must allege that: (1) the defendant intended or knew that emotional distress would likely result from its conduct; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's conduct caused plaintiff distress; and (4) that plaintiff's distress was severe."  *Roberts v. Circuit-Wise, Inc.*, 142 F.

Supp. 2d 211, 218 (D. Conn. 2001).  In order to form the basis of an intentional infliction of emotional distress claim, the conduct at issue must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and [] be regarded as atrocious, and utterly intolerable in a civilized community."  *Id.* (quoting Restatement (Second) of Torts § 46 cmt. d (1965)); *see also*, *DeLaurentis v. City of New Haven*, 597 A.2d 807, 827-29 (Conn. 1991); *Sacco v. Paradigm New Haven Health Care, LLC*, No. 3:12CV1207(WWE), 2013 WL 2321709, at *2 (D. Conn. May 28, 2013) ("Connecticut courts have narrowly defined the boundaries of extreme and outrageous conduct.").  Further, "[i]n the workplace context, the threshold for extreme and outrageous conduct is even higher [because] it is clear that individuals in the workplace reasonably should expect to experience some level of emotional distress, even significant emotional distress, as a result of conduct in the workplace."  *Michel v. Bridgeport Hosp.*, No. 116015195, 2011 WL 1176885, at *10 (Conn. Super. Ct. Mar. 7, 2011) (internal citation and quotation marks omitted); *see also*, *Miner v. Town of Cheshire*, 126 F. Supp. 2d 184, 195 (D. Conn. 2000) ("In the employment context, it is the employer's conduct, not the motive behind the conduct, that must be extreme and outrageous.").

The allegations in Plaintiff's Amended Complaint fall far short of describing the "extreme and outrageous" conduct necessary to state a plausible intentional infliction of emotional distress claim.  Plaintiff primarily relies on the same set of factual allegations she asserts in support of her age and gender harassment and discrimination claims, namely that she received "hyper-scrutiny," "criticism,"

18

"monitoring" and "berating and demeaning comments," was "falsely accus[ed] of misconduct," and that Alcott "placed his hands on" her or her chair.  (*See* Am. Compl. ¶¶ 38-39, 44-45, 48.)   Plaintiff also alleges that during her termination meeting, Alcott closed the door and "stood in front of the door with his arms folded."  (*See id.* ¶ 54.)   These allegations do not suggest a plausible claim of behavior that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency . . . ."  *See Roberts*, 142 F. Supp. 2d at 218.   *See also*, *Carrol v. Allstate Ins. Co.*, 815 A.2d 119, 126 (Conn. 2003) (explaining that extreme and outrageous conduct is "one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, Outrageous!  Conduct on the part of the defendant that is merely insulting or displays bad manners or results in hurt feelings is insufficient to form the basis for an action based upon intentional infliction of emotional distress.") (internal citation and quotation marks omitted); *see also, e.g.*, *Tracy v. New Milford Public Schs.*, 922 A.2d 280, 286 (Conn. App. Ct. 2007), *cert. denied*, 931 A.2d 935 (Conn. 2007) (court properly granted motion to strike plaintiff's claim for intentional infliction of emotional distress where plaintiff claimed that defendants conspired to engage in pattern of harassment including denial of position, initiated disciplinary actions without proper investigation, and defamed and intimidated plaintiff).

Undeniably, the only allegation that suggests that this conduct was "extreme and outrageous" is Plaintiff's own characterization of it as "beyond the bounds of decency tolerated in a civilized society." (*See* Am. Compl. ¶ 53.)

However, Plaintiff's conclusory recitation of the elements of her cause of action is plainly insufficient to establish a plausible claim of intentional infliction of emotional distress.  *See Huff v. West Haven Bd. of Educ.*, 10 F. Supp. 2d 117, 122 (D. Conn. 1998) (finding conclusory allegations are insufficient to support a cause of action for intentional infliction of emotional distress).  Accordingly, the Court should dismiss Plaintiff's claim for intentional infliction of emotional distress.

**VI.**  **Plaintiff's Claim For Negligent Infliction of Emotional Distress (Count Twelve) Must Be Dismissed Because Plaintiff Has Not Plead A Plausible Claim Of Unreasonable Conduct During The Termination Process.**

To prevail on a claim of negligent infliction of emotional distress, a plaintiff must prove "(1) the defendant's conduct created an unreasonable risk of causing the plaintiff emotional distress; (2) the plaintiff's distress was foreseeable; (3) the emotional distress was severe enough that it might result in illness or bodily harm; and (4) the defendant's conduct was the cause of the plaintiff's distress." *See Carrol*, 815 A.2d at 127.  In Connecticut, a claim for negligent infliction of emotional distress in the employment context "arises only where it is based upon unreasonable conduct of the defendant in the termination process.  The mere termination of employment, even where it is wrongful, is therefore not, by itself, enough to sustain a claim for negligent infliction of emotional distress."  *Davis v. Liberty Mut. Ins. Co.*, 218 F. Supp. 2d 256, 263 (D. Conn. 2002) (internal citation and quotation marks omitted).  This Court has acknowledged that plaintiffs "must overcome a high threshold in order to establish unreasonable conduct on the part of [employers] during the termination process." *See id.* (collecting cases).

20

Plaintiff's allegations concerning her termination meeting – that she was told by her supervisor "you will not be going anywhere" until she provided a copy of the recording; that Alcott closed the door and then "stood in front of [it] with his arms folded;" and that she was escorted by human resources to pack up her belongings and to leave the building (*see* Am. Compl. ¶¶ 54, 57) – are not so patently unreasonable that they create a plausible claim of negligent infliction of emotional distress.  Indeed, faced with almost the identical factual allegations, the Connecticut Superior Court held that they were insufficient to state a plausible claim of negligent infliction of emotional distress.  *See, e.g.*, *Michel*, 2011 WL 1176885, at *9 (finding plaintiff failed to plead a negligent infliction of emotional distress claim where plaintiff was "escorted to a private conference room where, she alleges, she was not free to leave, was questioned in a menacing manner, … and escorted from the premises."); *see also*, *Parsons v. United Techs. Corp.*, 700 A.2d 655, 667 (Conn. 1997) (finding "it is not patently unreasonable for an employer to remove a discharged employee from its premises under a security escort.").

For this reason, the Court should dismiss Plaintiff's claim for negligent infliction of emotional distress.

**VII.     Plaintiff's Claim For False Imprisonment (Count Fourteen) Must Be Dismissed Because Plaintiff Has Not Plead A Plausible Claim That She Was Unlawfully Restrained.**

To establish liability for false imprisonment, Plaintiff must prove that: (1) her physical liberty was actually restrained; (2) Defendants intended to confine her; (3) Defendants were conscious of the confinement; (4) she did not consent to

the confinement; and (5) the confinement was not otherwise privileged.  *See Richardson*, 169 F. Supp. 2d at 61.  "False imprisonment can only be based upon circumstances that include actual restraint, threat of force or the assertion of legal authority."  *Id.*  Thus, to plead a sufficient cause of action for false imprisonment, a plaintiff must include facts demonstrating that the employee's "supervisor [] exercised express or implied force . . . ."  *See Michel*, 2011 WL 1176885, at *13.  No such facts are alleged here.

Rather, Plaintiff alleges her false imprisonment claim in a wholly conclusory manner, unsupported by any facts showing that she has a plausible claim that Defendants exercised express or implied force, or otherwise unlawfully restrained her physical liberty.  Plaintiff's assertion that she "was held against her will" is a legal conclusion.  *See id.* at *12 (finding plaintiff's allegation that she "'was not free to leave' the conference room into which she was escorted, is a legal conclusion unsupported by facts").  To be sure, the facts that Plaintiff sets forth concerning her termination meeting, namely that the door to the conference room was closed, she was told she could not leave until she provided a copy of a recording and that her supervisor stood with his arms crossed (*see* Am. Compl. ¶¶ 53-54) describe "nothing more than the unfortunate scenario that is regularly played out when an employee is suspected of wrongdoing and asked by a supervisor to accompany her to a room where the employee is confronted and questioned in a hostile manner."  *Michel*, 2011 WL 1176885, at *12.

In the end, once again Plaintiff has attempted to state a claim based solely on her conclusory legal assertions.  Here too, such allegations lacking any facts

in support are blatantly insufficient.  Thus, the Court should dismiss Plaintiff's claim for false imprisonment.

<u>CONCLUSION</u>

For the reasons stated above, Defendants respectfully request that the Court dismiss Plaintiff's: (1) FLSA and CMWA overtime claims (Counts One and Two); (2) FLSA retaliation claim (Count Three), with prejudice; (3) ADEA and CFEPA Age Harassment claims (Counts Four and Five); (4) Title VII and CFEPA Gender Harassment and Discrimination claims (Counts Six and Seven); (5) Intentional Infliction of Emotional Distress claim (Count Eleven); (6) Negligent Infliction of Emotional Distress claim (Count Twelve); and (7) False Imprisonment claim (Count Fourteen).  Defendants also respectfully request that the Court award them attorneys' fees, costs any other relief that the Court deems just and proper.

Dated: December 1, 2014                    Respectfully submitted,


                                           By: /s/ Jonathan R. Donnellan
                                               Jonathan R. Donnellan (CT29106)
                                               Adam Colón (CT29651)
                                               Shari Goldsmith (Of Counsel)
                                                 THE HEARST CORPORATION
                                                 Office of General Counsel
                                               300 West 57th Street, 40th Floor
                                               New York, New York  10019
                                               Tel: (212) 841-7000
                                               Fax: (212) 554-7000
                                               Email:  jdonnellan@hearst.com
                                                       smgoldsmith@hearst.com
                                                       acolon@hearst.com

                                               *Attorneys for Defendants*

23

## CERTIFICATION OF SERVICE

I hereby certify that I have caused a true and correct copy of the foregoing to be served on all counsel of record, this 1st day of December 2014, by operation of the Court's CM/ECF electronic filing system.

/s/ Jonathan R. Donnellan
Jonathan R. Donnellan