# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MARIAN GAIL BROWN, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. |
| | : | |
| HEARST CORPORATION, HEARST | : | 3:14-cv-1220-VLB |
| MEDIA SERVICES CONNECTICUT, LLC, | : | |
| JOHN ALCOTT, BARBARA ROESSNER, | : | August 24, 2015 |
| and BRIAN KOONZ, | : | |
| Defendants. | : | |

## MEMORANDUM OF DECISION GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

MariAn Gail Brown brings this action against her former employers, Hearst Corporation ("Hearst") and Hearst Media Services Connecticut, LLC ("HMSC"), and supervisors, Barbara Roessner, John Alcott, and Brian Koonz, (collectively, "Defendants"), asserting, in relevant part, claims for: (1) the denial of overtime compensation in violation of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201, *et. seq.* and the Connecticut Minimum Wage Act ("CMWA"), Conn. Gen.Stat. § 31-58, *et. seq.*; (2) FLSA retaliation; (3) hostile work environment in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.,* and the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen.Stat. § 46a-60 *et seq.*; (4) sex discrimination in violation of Title VII and CFEPA; (5) intentional infliction of emotional distress; (6) negligent infliction of emotional distress; and (7) false imprisonment.  Defendants move to dismiss these claims pursuant to Federal Rule of Civil Procedure 12(b)(6).  For the following reasons, Defendants' motion is GRANTED in part and DENIED in part.

1

## FACTUAL BACKGROUND

The following facts, which are assumed to be true at the motion to dismiss stage, are drawn from Brown's amended complaint.  Dkt. No. 35 (Am. Compl.). For about 24 years, Brown worked as a staff writer, investigative reporter, and columnist for the Connecticut Post.  *Id.* at ¶ 24.  The Connecticut Post is jointly owned and operated by Defendants Hearst and HMSC, and those defendants jointly employed Brown.  *Id.* at ¶¶ 5–6.  Defendant Brian Koonz, who served as the Metro Editor of the Connecticut Post, supervised Brown.  *Id.* at ¶ 25.  Defendant John Alcott, who served as the Assistant Managing Editor of the Connecticut Post, supervised Koonz.  *Id.*  Defendant Barbara Roessner served as the Executive Editor of the Connecticut Post.  *Id.* at ¶ 53.

Beginning in October 2012 (around the same time that Defendants Alcott and Koonz began supervising Brown), Brown "consistently and regularly worked more than forty hours per week and was not paid overtime compensation."  *Id.* at ¶¶ 25, 30.  Defendants Alcott and Koonz told Brown that they did not want to see overtime on her timesheets—despite the fact that Defendants Alcott and Koonz began assigning Brown work that required more than 40 hours per week to complete.  *Id.* at ¶¶ 29–30.  They also warned Brown that seeking compensation for travel expenses would make her "a layoff target."  *Id.* at ¶ 32.  On February 23, 2013, Brown worked until one in the morning but indicated on her timesheet that she stopped working at eight the previous evening because Defendants Alcott and Koonz had pressured her not to bill more than forty hours per week.  *Id.* at ¶ 31.  In July 2013, Defendants Alcott and Koonz directed Brown to take "comp time" during a subsequent payroll period in lieu of overtime compensation.  *Id.* at

2

¶ 36.  For the pay periods ending on March 30th, April 13th, April 27th, May 4th, and May 25th of 2013, Defendants Hearst and HMSC altered Brown's timesheets and forged her signature to indicate that she worked only forty hours.  *Id.* at ¶¶ 34–35.  From November 2012 onward, Brown repeatedly told Defendants Alcott and Koonz that their failure to pay her overtime compensation was illegal.  *Id.* at ¶ 37.

In January 2013, Defendants Alcott and Koonz began "[c]onsistently subjecting [Brown] to hyper-scrutiny and criticism that was excessive and/or unwarranted"; "[c]onsistently subjecting [Brown] to berating and demeaning comments"; "[i]mposing productivity standards on [Brown] that were more demanding than those imposed on substantially younger and/or male co-workers"; and "[s]ubjecting [Brown] to unwarranted performance improvement plans that (1) were increasingly harsh, (2) imposed unreasonable standards that were impossible for Plaintiff to achieve in a forty hour workweek, and (3) threatened [Brown] with termination of employment."  *Id.* at ¶ 39.  For example, in February 2013, Hearst issued editorial standards, which stated that "news reporters must produce at least two A1-or cover-worthy enterprise stories a week," but, in September 2013, "Defendant" placed Brown on a performance improvement plan requiring her to produce "a minimum of one story and one, 4-inch brief per week."  *Id.* at ¶¶ 40–41 (internal quotation marks and alterations omitted).

Substantially younger employers (both male and female) were not held to these standards; in particular, two employees in their twenties (both male and

female) were given several months to write a single article. *Id.* at ¶ 42. Defendant Alcott told Brown "to get with the program," to write a couple of damn stories instead of 40-inch memos, that "this is the 21st century," that he knew how to make Brown's life difficult, and that he intended to do so. *Id.* at ¶¶ 42–43. Defendant Alcott, on at least four occasions, placed his hands on Brown when giving directives or criticism and, on another occasion, spun Brown's chair around, pinned her in by placing his hands around her chair, and "began berating her in a condescending fashion" within four inches of her face. *Id.* at ¶¶ 45–46.

On October 18, 2013, Defendants Alcott and Koonz held a disciplinary meeting with Brown to discuss her compliance with her performance improvement plan. *Id.* at ¶ 49. That meeting was suspended because Brown informed Defendants Alcott and Koonz that she wanted to record the meeting. *Id.* Several days later, Defendants Koonz and Alcott called Brown in for another meeting, and Defendant Alcott told Brown that she was not permitted to record the meeting. *Id.* at ¶ 50. Brown recorded the initial parts of the meeting but switched off her recorder after she was told to do so. *Id.* The meeting later ended abruptly after Defendant Alcott caught Brown taking contemporaneous written notes. *Id.* at ¶ 52.

The following week, on October 30, 2013, Brown was called into a meeting with Defendants Roessner and Alcott. *Id.* at ¶ 53. Brown played her prior recording at Defendant Roessner's behest, and Defendant Roessner terminated Brown's employment for recording the prior meeting. *Id.* Brown attempted to leave, but Defendant Roessner demanded that Brown hand over her personal cell

phone. *Id.* at ¶ 54.  Brown refused.  *Id.*  Defendant Roessner then told Brown that she could not leave.  *Id.*  Brown nevertheless attempted to leave, but Defendant Alcott got up, shut the open door, and blocked her exit by standing in front of the door with his arms folded.  *Id.*  A human resources representative later arrived, escorted Brown back to her desk, and shepherded Brown out of the building.  *Id.* at ¶¶ 56–57.

## LEGAL ANALYSIS

When reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted, a court "accept[s] all factual allegations as true and draw[s] all reasonable inferences in favor of the plaintiff."  *Litwin v. Blackstone Grp., L.P.*, 634 F.3d 706, 715 (2d Cir. 2011).  To survive a Rule 12(b)(6) motion, the complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

1. Federal and State Claims for Overtime Compensation Against Defendants Hearst and HMSC

"The FLSA mandates that [a covered employee] be compensated at a rate of no less than one and one-half times the regular rate of pay for any hours worked in excess of forty per week." *Nakahata v. New York–Presbyterian Healthcare Sys., Inc.,* 723 F.3d 192, 200 (2d Cir. 2013).  The CMWA also requires employers to compensate covered employees for any work over 40 hours a week.

*Arasimowicz v. All Panel Sys., LLC*, 948 F.Supp.2d 211, 216 (D. Conn. 2013) (citing Conn. Gen.Stat. § 31–76c).  To state a plausible overtime claim, "a plaintiff must sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours."  *Lundy v. Catholic Health Sys. of Long Island, Inc.*, 711 F.3d 106, 114 (2d Cir. 2013).  "[This] requirement . . . [is] not an invitation to provide an all-purpose pleading template alleging overtime in 'some or all workweeks.'"  *Dejesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 90 (2d Cir. 2013).  A plaintiff must "provide some factual context that will 'nudge' [her] claim 'from conceivable to plausible.'"  *Id.*   Whether the facts alleged state a plausible claim for overtime compensation is context specific; a plaintiff is not required to approximate the number of overtime hours worked.  *See Lundy*, 711 F.3d at 114 & n.7.

Defendants move to dismiss Brown's overtime claims, arguing that Brown "does not allege that she worked over 40 hours in a week for which she was not compensated."  Dkt. No. 39-1 (Mem.) at 7.  Specifically, Defendants argue that Brown cannot rely on her conclusory allegation that she "consistently and regularly worked more than 40 hours per week and was not paid overtime compensation for hours in excess of forty hours per week."  *Id.* at 8.  They further argue that her other factual allegations, such as her allegation that she worked until 1 a.m. on one occasion, fail to remedy this defect because she does not allege that she worked more than forty hours during any specific week, including the week during which she worked until 1 a.m.  *Id.* at 8–9.

6

Defendants are patently incorrect. Brown's complaint states plausible claims for overtime compensation. In addition to generally alleging that, from October 2012 until October 2013, "[she] consistently and regularly worked more than forty hours per week and was not paid overtime compensation," Brown provided sufficient factual content to nudge her claim from conceivable to plausible. Brown specifically alleged her employment positions and dates of employment, that her supervisors explicitly told her to omit any overtime hours from her weekly timesheets, that she understated the hours that she worked in a specific pay period because she was expressly instructed not to bill over forty hours, that her supervisors told her to seek compensation time in another pay period to avoid overtime compensation, and that her employers altered her timesheets on several, specific pay periods. Brown does not allege the approximate number of uncompensated overtime hours or provide a log of all hours worked, but she is not required to do so. Brown must only recall sufficient facts based on her memory and experience to give plausibility to her general allegation that she was regularly denied overtime compensation, and she has done so.

Moreover, Brown's complaint contains more factual allegations than the complaints made by the plaintiffs in *Nakahata* and *Dejesus.* The *Nakahata* court affirmed the district court's dismissal because the plaintiffs merely alleged that "[they] were not compensated for work performed during meal breaks, before and after shifts, or during required trainings" without alleging that "[they] were scheduled to work forty hours in a given week." *Id.* at 200–01. In other words,

the *Nakahata* plaintiffs' complaint failed to state a claim because they did not allege that they worked more than forty hours.  Here, in contrast, Brown explicitly alleged that she regularly worked more than forty hours per week without overtime compensation.  The *Nakahata* decision stands only for the proposition that it is necessary (but not sufficient) to allege working more than forty hours per week because the *Nakahata* court declined to rule on "[w]hat [other] aspects of Plaintiffs' position, pay, or dates of employment are necessary to state a *plausible* claim for relief."  *Id.* at 201.  The *Dejesus* court affirmed the district court's dismissal of the plaintiff's complaint because "[she] provided less factual specificity than did the plaintiffs in *Lundy* or *Nakahata*."  *Dejesus*, 726 F.3d at 89.  Unlike Brown, the *Dejesus* plaintiff provided no facts in addition to her conclusory allegation that she worked more than 40 hours per week in some or all weeks.  *Id.*  Accordingly, Defendants' motion to dismiss Brown's overtime claims is DENIED.

### 2.  FLSA Retaliation Claims Against Defendants Hearst and HMSC

The FLSA prohibits "any person [from] discharg[ing] or in any other manner discriminat[ing] against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under [the] FLSA."  *Mullins v. City of New York*, 626 F.3d 47, 53 (2d Cir. 2010) (internal quotation marks and alterations omitted).  A *prima facie* FLSA retaliation claim requires proof of: "(1) participation in protected activity known to the defendant . . . ; (2) an employment action disadvantaging the plaintiff; and (3) a

causal connection between the protected activity and the adverse employment action."[1]  *Id.*

Defendants argue that Brown does not successfully plead the first element of a *prima facie* FLSA retaliation claim because she "only alleges that she verbally complained to her supervisors."   Dkt. No. 39-1 (Mem.) at 10–11. However, the Second Circuit recently overruled *Lambert v. Genesee Hosp.*, 10 F.3d 46 (2d Cir. 1993), and held that an employee engages in a protected activity when she "orally complain[s] to [her] employers, so long as [her] complaint is 'sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection.'"  *Greathouse v. JHS Sec. Inc.*, 784 F.3d 105, 117 (2d Cir. 2015) (quoting *Kasten v. Saint-Gobain Performance Plastics Corp.*, 131 S. Ct. 1325 (2011)).   Defendants do not argue that Brown's oral complaints were insufficiently clear or raise another deficiency with respect to Brown's retaliation claim.  Accordingly, Defendants' motion to dismiss this claim is DENIED.

---

[1] **The Court does not determine whether a plaintiff must plead a *prima facie* claim to survive a motion to dismiss because, as discussed above, Defendants incorrectly argue that oral complaints do not constitute a protected activity.**

**3.** **Federal Hostile Work Environment Claims Against Defendants Hearst and HMSC and State Law Hostile Work Environment Claims Against Defendants Hearst, HMSC, Alcott, and Koonz[2]**

"Title VII creates a cause of action based on the presence of a hostile working environment when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently pervasive to alter the conditions of the victim's employment." *Brennan v. Metro. Opera Ass'n, Inc.*, 192 F.3d 310, 318 (2d Cir. 1999) (internal quotation marks omitted).  ADEA and CFEPA also prohibit hostile work environments and are analyzed identically.[3]  *Id.*; *Brittell v. Dep't of Corr.*, 247 Conn. 148, 166–67 (1998).  A hostile work environment claim requires a plaintiff to plead facts tending to show that the complained of conduct: "(1) is objectively severe or pervasive—that is, creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an

---

[2]  Brown's complaint groups her hostile work environment and discrimination claims together in a single count, but these are distinct claims for relief.  *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002) ("Hostile environment claims are different in kind from discrete acts. Their very nature involves repeated conduct.").  Accordingly, the Court does not address the sufficiency of Brown's federal and state age discrimination claims, which are grouped with her hostile work environment claims in Counts 4–5, because Defendants do not make any specific arguments as to why these claims, as distinct from her claims for hostile work environment, should be dismissed. The Court separately addresses Brown's federal and state sex discrimination claims in Section 4 of this memorandum.

[3]  CFEPA contains one distinction relevant here: "supervisory employees or other employees may be held individually liable under [Connecticut General Statute] §§ 46a–60(a)(4) and (a)(5)."  *Ahmad v. Yellow Cab Co.*, 49 F.Supp.3d 178, 187 (D. Conn. 2014).  Brown seeks to hold Defendants Alcott and Koonz liable under  section 46a-60(a)(5).

environment because of the plaintiff's [age or] sex."[4]  *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007) (internal quotation marks and alterations omitted).

Defendants first argue that Brown fails to state either age-based or sex-based claims for hostile work environment because she does allege facts tending to show objectively pervasive or severe conduct.  Dkt. No. 39-1 (Mem.) at 12–13, 15–16.  Specifically, Defendants argue that the following incidents do not amount to such a showing: hyper-scrutiny; excessive criticism; berating and demeaning comments; unreasonable performance standards; excessive oversight; false accusations; being told by Defendant Alcott to "get with the program," that "this is 21st century," and that he would make life difficult; and having Defendant Alcott, on at least five different occasions, place his hands on Brown while spitting out vituperative criticisms.  *Id.* at 12–13, 15–16.  Defendants reason that these conditions constitute mere "unpleasantness and uncivility [sic]."  *Id.* at 12.

The first element of a hostile work environment claim requires a plaintiff to allege facts suggesting that her workplace was permeated with "discriminatory intimidation, ridicule, and insult," that was "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993).  Whether an environment is hostile or abusive depends on the totality of the circumstances.  *See Morgan*, 536 U.S. at 115.  The circumstances to consider include: "the frequency of the discriminatory conduct; its severity; whether it is physically

---

[4] For purposes of this memorandum, this Court assumes the existence of vicarious liability because Defendants do not argue that the persons responsible lacked the authority to take tangible employment action.

threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 at 23. The principal focus should be on the severity and frequency of the abusive conduct. *See Aulicino v. New York City Dep't of Homeless Servs.*, 580 F.3d 73, 82 (2d Cir. 2009).

Brown alleges ample facts to plausibly suggest an objectively hostile work environment with respect to Defendants Hearst, HMSC, and Alcott but not with respect to Defendant Koonz. Brown alleges a continuing course of misconduct: she was consistently subjected to hyper-scrutiny, excessive and unwarranted criticism, berating and demeaning comments, and excessive work assignments. Alone, these allegations of continuing mistreatment would be insufficient, in and of themselves, to plausibly suggest actionable conditions because they do not rise to the level of creating an abusive working environment. *See Littlejohn v. City of New York*, 2015 WL 4604250, at *16 (2d Cir. Aug. 3, 2015) (affirming dismissal of hostile work environment claim predicated on, *inter alia*, "negative statements," "harsh tones," and "generally feeling left out"). However, Brown alleges that she was subjected to other treatment.

Brown also alleges that she was physically threatened and humiliated Specifically, she alleges that Defendant Alcott, on at least four occasions, placed his hands on Brown and, on another occasion, spun Brown's chair around, pinned her in by placing his hands around her chair, and "began berating her in a condescending fashion" within four inches of her face. *See Cruz v. Liberatore*, 582 F.Supp.2d 508, 519 (S.D.N.Y. 2008) ("A single incident in which the conduct

alleged crosses the line from mere insults to actual physical force . . . is more likely to support a hostile work environment claim . . . . Indeed, [the defendant's] alleged conduct is susceptible to being characterized by reasonable minds as both abusive and hostile—the eponym of the claim that [the plaintiff] seeks to establish." (internal citations omitted)).  These incidents, in conjunction with the other allegations of continuing mistreatment, plausibly suggest objectively hostile conditions because the alleged degradation includes inappropriate physical, as well was verbal, conduct of an oppressive if not threatening nature. Brown, however, does not allege that Defendant Koonz similarly crossed the threshold from incivility to abuse, and he therefore cannot be held personally liable.  Only Defendants Hearst, HMSC (under federal and state law), and Alcott (under state law) may be held liable.  Accordingly, Defendants' motion to dismiss the state law claims for hostile work environment against Defendant Koonz is GRANTED.

Defendants also argue that Brown does not allege facts tending to show that the conduct of which she complained occurred because of her age or sex. *Id.* at 13–16.  Specifically, Defendants argue that causation cannot be plausibly suggested by alleging the existence of a similarly situated employee.  *Id.* at 13–14. Defendants further argue that, even assuming such an allegation is sufficient, Brown cannot do so with respect to her sex-based claims because one of the similarly situated employees was female.  *Id.* at 15–16.

As an initial matter, Brown is not required to directly tie every instance of mistreatment to her age or sex; Brown may use incidents that are facially age- or sex-neutral.  *See Alfano v. Costello,* 294 F.3d 365, 375 (2d. Cir. 2002) ("There is little question that incidents that are facially sex-neutral may sometimes be used to establish a course of sex-based discrimination—for example, where the same individual is accused of multiple acts of harassment, some overtly sexual and some not.").  Further, Defendants are incorrect that Brown may not rely on the existence of similarly situated employees to demonstrate that the complained of conduct occurred because of her age or sex.  *Cf. Lute v. Dominion Nuclear Connecticut, Inc.,* 2015 WL 1456769, at *16 (D. Conn. Mar. 30, 2015) (dismissing hostile work environment claim on summary judgment, in part, because "[the plaintiff] does not identify similarly situated individuals who were treated differently"); *DeFina v. Meenan Oil Co., Inc.,* 924 F.Supp.2d 423, 438–39 (E.D.N.Y.2013) ("Plaintiff has simply not shown . . .  through evidence of other similarly situated co-workers who were not subjected to the same conduct . . . how the alleged conduct was discriminatory based on plaintiff's [race].")  Thus, Brown's allegation that similarly situated younger employees were not subject to the complained of conduct tends to show that the complained of conduct occurred because of her age.  Moreover, the person responsible for the complained of conduct, Defendant Alcott, made ageist statements—for example, he told her "to get with the program" and "this is the 21st century."  Accordingly, Defendants' motion to dismiss Brown's age-based claims with respect to Defendants Hearst, HMSC, and Alcott is DENIED.

14

Brown's sex-based claims are more tenuous.  Unlike her age-based claims, her sex-based claims cannot rely on her allegation that similarly situated employees were treated differently because she alleges that one of the similarly situated employees was female.  *See Humphrey v. New York Life Ins. Co.,* 2006 WL 3837718, at *8 (E.D.N.Y. Dec. 28, 2006) (plaintiff's admission that employer did not subject other employees in his protected class to similar adverse action did not create an inference of discrimination).  Moreover, unlike her age-based claims, Brown does not allege that any critiques directly or indirectly implicated her sex.  The Court is left only with the allegation that Defendant Alcott, a male supervisor, used physical force and restraint on multiple occasions to assert dominance over Brown, a female subordinate.  These events admittedly "lack[ ] any sexual component or any reference to the victim's sex," but the Second Circuit "has found workplace situations discriminatory under a hostile work environment theory where the conduct at issue . . . could, in context, reasonably be interpreted as having been taken on the basis of plaintiff's sex."  *Gregory v. Daly*, 243 F.3d 687, 695 (2d Cir. 2001), *as amended* (Apr. 20, 2001) (citing with approval, *inter alia*, *Williams v. Gen. Motors Corp.*, 187 F.3d 553, 565 (6th Cir. 1999)).  At the motion to dismiss stage, the Court cannot extricate displays of physical dominance from stereotypical conceptions of sex to enable it to conclude that it is implausible that such conduct would not have occurred but for the fact that Brown is a woman.  *Cf. Williams*, 187 F.3d at 565 ("*Any* unequal treatment of an employee *that would not occur but for the employee's gender* may, if sufficiently severe or pervasive . . . constitute a hostile environment in

violation of Title VII."). Accordingly, Defendants' motion to dismiss Brown's sex-based claim with respect to Defendants Hearst, HMSC, and Alcott is DENIED.

**4. Federal Sex Discrimination Claims Against Hearst and HMSC and State Law Sex Discrimination Claims Against Hearst, HMSC, Alcott, and Koonz**

Title VII and CFEPA prohibit an employer from refusing to hire, discharging, or otherwise discriminating "against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e-2(a)(1); *see State v. Commission on Human Rights and Opportunities,* 211 Conn. 464, 470 (1989) ("The intent of the Connecticut legislature in adopting the CFEPA was to make the statute coextensive with Title VII."). To state a sex discrimination claim, a plaintiff must allege facts plausibly suggesting that she "is a member of a protected class, was qualified, suffered an adverse employment action, and has at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Littlejohn*, 2015 WL 4604250, at *8.

Defendants argue that Brown has failed to allege facts satisfying the fourth element, Dkt. No. 39-1 (Mem.) at 17, which the Second Circuit recently clarified to require only minimal support for the proposition that the employer was motivated by discriminatory intent, *Littlejohn*, 2015 WL 4604250, at *8. Specifically, Defendants again argue that Brown cannot rely on her allegation that she was treated less favorably than a similarly situated employee outside her protected group. *Id.* The Court agrees, and Defendant Koonz therefore cannot be held liable. But, as noted above, Defendant Alcott's displays of physical dominance

16

provide the minimal support needed to support an inference of causation. Accordingly, Defendants' motion to dismiss Brown's sex discrimination claim is GRANTED with respect to the state law claims against Defendant Koonz and DENIED in all other respects.

5. <u>Intentional Infliction of Emotion Distress Claims Against Defendants Hearst, HMSC, and Alcott[5]</u>

Under Connecticut law, a claim for intentional infliction of emotional distress has four elements: (1) "the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct"; (2) "the conduct was extreme and outrageous"; (3) "the defendant's conduct was the cause of the plaintiff's distress"; and (4) "the emotional distress sustained by the plaintiff was severe." *Appleton v. Bd. of Educ.*, 254 Conn. 205, 210 (2000). Defendants challenge the sufficiency of Brown's complaint only with respect to the second element, i.e., whether the conduct was extreme and outrageous, arguing that her allegations fall far short. Dkt. No. 39-1 (Mem.) at 18.

Extreme and outrageous conduct "exceeds all bounds usually tolerated by decent society." *Appleton,* 254 Conn. at 210–11. "There is no bright line rule to determine what constitutes extreme and outrageous conduct sufficient to maintain an action as the court must look to the specific facts and circumstances of each case in making its decisions." *Menon v. Frinton,* 170 F.Supp.2d 190, 198

---

[5] **Brown predicates the liability of Hearst and HMSC on the theory of respondeat superior. The Court does not address the appropriateness of the applicability of this doctrine with respect to any of the state law claims because Defendants do not raise any argument with respect to whether Alcott or any other individual defendant were acting within the scope of their employment.**

(D. Conn. 2001) (internal citations and quotation marks omitted).   In the workplace, the threshold for demonstrating extreme and outrageous conduct is higher: "[i]t is clear that individuals in the workplace reasonably should expect to experience some level of emotional distress, even significant emotional distress, as a result of conduct in the workplace." *Perodeau v. Hartford,* 259 Conn. 729, 757 (2002).   "Generally, personnel actions or workplace conduct that falls within the reasonably expected vicissitudes of employment, . . . including insults, verbal taunts, threats, indignities, annoyances, petty oppressions or conduct that displays bad manners or results in hurt feelings, even if unlawful, are usually not deemed extreme and outrageous conduct." *Craig v. Yale Univ. Sch. of Med.*, 838 F.Supp.2d 4, 10 (D. Conn. 2011)

This case presents a close question, but the Court rules that it is plausible that a more fully-developed record "could show that reasonable minds could differ as to whether the conduct was extreme and outrageous or not." *Id.* at 11. As an initial matter, Brown alleges that Defendant Alcott made a concerted effort to end Brown's 24-year career with the Connecticut Post as soon as Alcott became Brown's supervisor.  Like the *Craig* plaintiff's residency, Brown's tenure with the Post is a career rather than an easily replaced job.  Moreover, Defendant Alcott was Brown's supervisor.  *See Sangan v. Yale University,* 2006 WL 2682240, *6 (D.Conn. Sept. 15, 2006) ("[B]ehavior which otherwise fails to constitute extreme and outrageous conduct may yet rise to that intolerable level, and thus be actionable as IIED, when it arise[s] from an abuse by the actor of a position . . . which gives him actual or apparent authority over the other or power to affect his

18

interests."). Finally, Brown's verbal conduct was accompanied by physical touching and restraint. *See Arnold v. Thermospas, Inc.*, 863 A.2d 250, 254 (Super. Ct. 2004) (observing that Connecticut courts typically do not grant a motion to strike where physical contact has occurred and ruling that, even absent physical touching, plaintiffs stated a IIED claim where they alleged that defendant supervisor "physically restrained them by leaning over their chairs and preventing them from standing"). The tolerable vicissitudes of employment may include petty indignities such as hurt feelings but certainly exclude being wrangled like a petulant child. All of these factors, in particular the *Arnold* case which presents an identical factual circumstance, leads to the conclusion that Brown has plausibly alleged the existence of extreme or outrageous conduct on the part of Defendant Alcott. Accordingly, Defendants' motion to dismiss Brown's claims for intentional infliction of emotional distress is DENIED.

**6.** **Negligent Infliction of Emotional Distress Against Defendants Hearst, HMSC, and Alcott**

Under Connecticut law, a claim for negligent infliction of emotional distress has four elements: "(1) the defendant's conduct created an unreasonable risk of causing the plaintiff emotional distress; (2) the plaintiff's distress was foreseeable; (3) the emotional distress was severe enough that it might result in illness or bodily harm; and (4) the defendant's conduct was the cause of the plaintiff's distress." *Carrol v. Allstate Ins. Co.,* 262 Conn. 433, 444, (2003). "[N]egligent infliction of emotional distress in the employment context arises only when it is based upon unreasonable conduct of the defendant in the termination process." *Perodeau v. City of Hartford,* 259 Conn. 729, 750, (2002) (internal

quotation marks omitted).   Thus, "[this] negligence claim cannot be based on events occurring during [the] employment."   *Jordan v. U.S. Dep't of Treasury*, 334 F. App'x 372, 374 (2d Cir. 2009).

Defendants move to dismiss Brown's claims for negligent infliction of emotional distress, arguing that the conduct occurring during the termination process was not patently unreasonable.   Dkt. No. 39-1 (Mem.) at 20–21. Defendants are correct.   As an initial matter, the fact that Brown had a security escort is of no moment.   *See Parsons v. United Technologies Corp.*, 243 Conn. 66, 89 (1997) ("[I]t is not patently unreasonable for an employer to remove a discharged employee from its premises under a security escort.").   Moreover, the fact that Roessner told Brown that she could not leave and demanded to have Brown's personal cellphone, even though asserted by a person of authority, are not sufficient to establish a claim for negligent infliction of emotional distress on the part of Hearst and HMSC.   These comments do reasonably portend mental illness or bodily harm.   Similarly, blocking Brown's exit may have been wrongful, but the harm flows from its assault on dignity rather than its likeliness to cause mental illness.   Brown points to no cases that convince the Court otherwise: during the termination process, Brown was not held for three days, falsely accused of anything, or screamed at and berated.   Accordingly, Defendants' motion to dismiss Brown's claims for negligent infliction of emotional distress is GRANTED.

**7.** **False Imprisonment Claims Against Defendants Hearst, HMSC, Alcott, and Roessner**

Under Connecticut law, a claim for false imprisonment requires a plaintiff to prove: "that [her] physical liberty [was] restrained by the defendant and that the restraint was against [her] will, that is, that [s]he did not consent to the restraint or acquiesce in it willingly." *Berry v. Loiseau*, 223 Conn. 786, 820 (1992). Liability requires restraint through the express or implied use of force. *Id.* at 821. Defendants argue that Brown does not allege facts tending to show that she was not free to leave. Dkt. No. 39-1 (Mem.) at 22–23. Defendants are incorrect. Brown alleged that Defendant Roessner explicitly told Brown that she could not leave despite the fact that Brown expressed a desire to leave and demanded that she hand over her personal cellular phone. This verbal command, which came from the Executive Editor of the Connecticut Post, was made in conjunction with Defendant Alcott's display of physical authority: Defendant Alcott, who had previously subjected Brown to physical force and restraint, blocked her exit by closing the door and standing in front of it. Under these combined conditions, no reasonable person would have felt free to leave without risking her physical well-being. A person need throw herself in harm's way before a false imprisonment claim may lie. Accordingly, Defendants' motion to dismiss Brown's false imprisonment claims is DENIED.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is GRANTED with respect to Brown's state law claims for hostile work environment against Defendant Koonz, state law claims for sex discrimination against Defendant Koonz, and state law claims for negligent infliction of emotional distress against Defendants Hearst, HMSC, and Alcott and DENIED in all other respects.  The case will proceed on Plaintiff's claims for: (1) FLSA overtime, as against Hearst and HMSC; (2) CMWA overtime, as against Hearst and HMSC; (3) FLSA retaliation, as against Hearst and HMSC; (4) ADEA hostile work environment, discrimination, and retaliation, as against Hearst and HMSC; (5) Title VII hostile work environment, discrimination, and retaliation, as against Hearst and HMSC; (6) CFEPA hostile work environment, as against Hearst, HMSC, and Alcott; (7) CFEPA age discrimination, as against Hearst, HMSC, Alcott, and Koonz; (8) CFEPA sex discrimination, as against Hearst, HMSC, and Alcott; (9) CFEPA retaliation, as against Hearst, HMSC, Alcott, and Koonz; (10)  intentional infliction of emotional distress, as against Hearst, HMSC, and Alcott; (11) battery, as against Hearst, HMSC, and Alcott; and (12) false imprisonment, as against Hearst, HMSC, Roessner, and Alcott.

IT IS SO ORDERED.

_____/s/_____
Hon. Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut: August 24, 2015

22